**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Kathryn Diane Markwell,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-25-02990-PHX-JAT

**ORDER**

Pending before the Court is Plaintiff Kathryn Markwell's appeal from the Commissioner of the Social Security Administration's ("SSA" or "Defendant") denial of Social Security benefits. (Doc. 1). The appeal is fully briefed (Doc. 6; Doc. 8 Doc. 9), and the Court now rules.

## I. BACKGROUND

### A. Factual Overview

Plaintiff was 66 years old on her date last insured of December 31, 2026. (Doc. 5-3 at 31). She has a high school education and attended two years of college, and she has a history of past relevant work as an administrative clerk and a sanitary landfill attendant. (Doc. 5-3 at 41; Doc. 5-8 at 138). On March 28, 2022, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning August 22, 2021. (Doc. 5-3 at 29). After an administrative hearing, an Administrative Law Judge ("ALJ") denied Plaintiff's claim. (*Id.* at 42). The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the agency's final decision. (*Id.* at 2).

Plaintiff filed the present appeal. (Doc. 1).

**A. The SSA's Five-Step Evaluation Process**

To qualify for social security disability insurance benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities," and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit[]" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), 404.1520(e). The claimant's RFC is her ability

perform physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* § 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of her "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 404.1520(e). "Past relevant work" is work the claimant has "done within the past five years that was substantial gainful activity and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1)(i). If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the final step, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the claimant is disabled. *Id.*

**B. The ALJ's Application of the Factors**

Here, at Step One, the ALJ concluded that Plaintiff did not engage in substantial gainful activity since her alleged onset date of August 22, 2021. (Doc. 5-3 at 31).

At Step Two, the ALJ determined that Plaintiff had the following severe physical impairments: "degenerative disc disease with lumbar stenosis, obesity, and osteoarthritis." (*Id.*)

At Step Three, the ALJ found that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 33). The ALJ then found Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except she can stand and walk 4 hours in an 8-hour day and sit for 6

> or more hours in an 8-hour day. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance, kneel, crouch, and crawl. The claimant can tolerate occasional exposure to workplace wetness and vibration, but she can tolerate no exposure to workplace hazards such as unprotected heights and exposed, moving machinery.

(Doc. 5-3 at 34.)

At Step Four, the ALJ established that Plaintiff could perform her past relevant work as an administrative clerk. (*Id.* at 41). The ALJ did not reach Step Five and concluded that Plaintiff was not disabled as defined in the Social Security Act from the alleged onset date of August 22, 2021, through the date of the ALJ's decision. (*Id.* at 42).

## II. LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). "Substantial evidence" is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). It requires "more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)). This Court must consider the record in its entirety, "weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." *Revels*, 874 F.3d at 654 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198

(9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination; it "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

Plaintiff argues the ALJ committed reversible error by (1) not properly assessing Plaintiff's severe, medically determinable impairments, (2) rejecting Plaintiff's symptom testimony, and (3) not properly assessing medical opinions. (Doc. 6 at 2).

### A. Plaintiff's Mental Medically Determinable Impairments

Plaintiff argues that the ALJ failed to find that several of her asserted mental impairments constitute severe medically determinable impairments. (Doc. 6 at 4).

At Step Two of the SSA's five-step evaluation process, the burden is on the claimant to establish the existence of a medically determinable impairment prior to her date last insured. 20 C.F.R. §§ 416.912, 416.921; *see also Petty v. Astrue*, 550 F.Supp.2d 1089, 1097 (D. Ariz. 2008). Section 416.921 requires that "a physical or mental impairment [] be established by objective medical evidence from an acceptable medical source" and explicitly excludes a claimant's "statement of symptoms, a diagnosis, or a medical opinion" from consideration. *Id.* § 416.921; *see also id.* § 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment[] which . . . would lead to the conclusion that you are disabled."). Additionally, the burden is on the claimant to submit evidence that her impairments are of a severity that would "significantly limit [her] physical and mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Reversible error exists where an ALJ precludes a severe impairment at Step Two and fails to account of any additional function limitations in the RFC assessment. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ reviewed the record evidence, medical opinions, and the lay witness statement before him to determine that Plaintiff had the following severe impairments at

Step Two: "degenerative disc disease with lumbar stenosis, obesity, and osteoarthritis." (Doc. 5-3 at 31). Additionally, the ALJ considered the rest of Plaintiff's limitations and asserted symptoms and included related additional functional limitations into Plaintiff's RFC. (*Id.* 32-33).

First, Plaintiff contends the ALJ erred by not finding her dyslexia constituted a severe medically determinable impairment. (Doc. 6 at 4–6). Plaintiff cites a treatment report from February 2020 that indicated Plaintiff presented with "suspected moderate to severe dyslexia." (*Id.* at 4 (citing Doc. 5-8 at 99)). Plaintiff further states she could only read and understand 200-work related words with 60% accuracy and she could only fluently read sentences with 28% accuracy. (*Id.* (citing Doc. 5-8 at 95)). But an impairment will only be considered severe if it is more than a slight abnormality that has more than a minimal effect on the claimant's ability to work. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

Here, the record does not demonstrate that Plaintiff's dyslexia more than minimally limited her ability to perform basic work activities. Indeed, the only references in the record to Plaintiff's dyslexia affecting her ability to work as an administrative clerk were self-reports from Plaintiff herself. (*See* Doc. 5-8 at 97, 113, 116, 122). The ALJ did not err by failing to consider Plaintiff's dyslexia a severe impairment without objective medical evidence in the record. *See* 20 C.F.R. § 416.921 ("We will not use your statements of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment."); *see also id.* § 416.912 (the burden is on the claimant to prove that she is disabled).

Second, Plaintiff argues the ALJ "erred in finding she had no mental health [medically determinable impairment]." (Doc. 6 at 6).[1] Plaintiff cites her panic attacks and anxiety as affecting her work performance. (*Id.*) In support, she argues she lost her job, felt depressed, rarely left the house, was assessed with mixed anxiety and depression, etc. (*Id.*)

[1] In Plaintiff's reply brief, she argues the Commissioner failed to dispute that if the ALJ incorrectly failed to consider the presence of a mental disorder as a medically determinable impairment, and that the Court should find the failure to respond to this argument constitutes the Commissioner's abandonment of this argument. (Doc. 9 at 2). The Commissioner, however, did address this argument in the response brief. (*See* Doc. 8 at 9–12).

None of these reasons, however, demonstrate that Plaintiff's mental health more than minimally limited her ability to perform basic work activities. *Webb*, 433 F.3d at 686. And again, Plaintiff cites self-reports of these struggles. (*Id.* (citing Doc. 5-7 at 88; Doc. 5-8 at 114, 116, 120, 122–23, 139, 221, 218, 268 (noting Plaintiff was not interested in intervention for mixed anxiety and depressive disorder)). The ALJ "will not use [the Plaintiff's] statements of symptoms to establish the existence of an impairment." 20 C.F.R. § 416.921. Accordingly, the Court finds no error.[2]

**B. Plaintiff's Symptom Testimony**

Plaintiff argues that the ALJ erred in failing to provide specific, clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. (Doc. 6 at 2). Conversely, Defendant argues the ALJ's assessment of Plaintiff's subjective symptom testimony was reasonable and supported by substantial evidence. (Doc. 8 at 8).

1. <u>Legal Standard for Evaluating Symptom Testimony</u>

In assessing the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal citation and quotation marks omitted). "Second, if the claimant meets [the] first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The "specific, clear, and convincing" standard is satisfied where the "ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). To be sufficiently specific, the ALJ must identify "what testimony

[2] Because the ALJ did not err in finding Plaintiff has no mental medically determinable impairment, the Court does not address Plaintiff's argument that the ALJ failed to consider the impact her mental medically determinable impairment would have on her RFC. (Doc. 6 at 5–7).

is not credible and what evidence undermines the claimant's complaints." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Moreover, "[t]he evidence upon which the ALJ relies must be substantial." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "If the ALJ's credibility finding is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

Factors an ALJ may consider when determining credibility include: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim*, 763 F.3d at 1163 (quoting *Smolen*, 80 F.3d at 1284).

2. <u>The ALJ's Evaluation of Plaintiff's Symptom Testimony</u>

The ALJ summarized Plaintiff's testimony at the administrative hearing as follows:

> The claimant alleged disability based on back surgery, nerve damage, diabetes, knee surgery, shoulder surgery, spinal stenosis, and degenerative disc disease. She reported she was unable to stand or sit for more than about 10 minutes and unable to pick up more than 10 to 20 pounds. The claimant reported difficulties with lifting, squatting, bending, balancing, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, concentrating, and using her hands. She asserted she experienced dizziness and numbness in her left arm when she looked up to get something out of the cupboard. She stated she could not put any weight on her knees, get up after a fall, climb out of the bathtub, or grocery shop without using a scooter. At the hearing, the claimant added reports that she is unsteady on her feet, falls and cannot get back up, and can barely walk or do anything.

(Doc. 5-3 at 34–35 (citing Doc. 5-7 at 6, 21, 46, 51, 53, 58, 66, 88)).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms. (*Id.* at 35). However, the ALJ concluded the evidence did not support the severity of Plaintiff's alleged symptoms and was inconsistent with the extent of limitation that Plaintiff alleged. (*Id.*)

Plaintiff first argues her activities were not inconsistent with her symptom testimony. (Doc. 6 at 9). In support, Plaintiff contends "the ALJ failed to appreciate

evidence that [Plaintiff] deteriorated over the course of the record," such as evidence that Plaintiff's right leg was going numb and she would sometimes lose control over it, and later her left leg also started going numb. (*Id.* (citing Doc. 5-8 at 150, 152)). The ALJ, however, considered this evidence in noting Plaintiff "denied ongoing lumbar extremity numbness." (Doc. 5-3 at 35 (citing Doc. 5-8 at 145–46)). Indeed, the record confirms the same. In March 2020, Plaintiff reported "extremity numbness," but by May 2022, she reported "things would go numb and then would fall [but] legs no longer go numb." (Doc. 5-8 at 145). And in August 2022, Plaintiff reported she only "sometimes gets numb," that it was "like [how] it was in past," and that her "left leg is still working." (*Id.*) Because Plaintiff has not offered any other basis to challenge the ALJ's findings regarding the alleged deterioration in Plaintiff's ability to feel in her legs, the Court finds the ALJ did not err in discounting Plaintiff's testimony on this basis.

Plaintiff next argues the ALJ erred in discrediting her testimony regarding her barely being able to walk or do anything. (Doc. 6 at 9-12). Plaintiff analogizes her facts to *Revels v. Berryhill*, 874 F.3d 648, 660 (9th Cir. 2017). (Doc. 9 at 8). In *Revels*, the claimant stated she had difficulty dressing, bathing, making food for herself, etc. *Revels*, 874 F.3d at 660. There, the ALJ relied on a report that indicated the claimant could brush her teeth, wash her face, cook, etc., to find the claimant's testimony was not credible. *Id.* at 667. The Ninth Circuit Court of Appeals disagreed and held the ALJ erred because he failed to acknowledge the same report indicated the claimant could only "complete some tasks in a single day and regularly needed breaks." *Id.* Plaintiff's facts are distinguishable. Unlike the claimant in *Revels* who stated she had "*difficulty*" performing certain activities, Plaintiff here testified she "went from being able to do all kinds of things *to not hardly being able to do anything* [and] [she] can't hardly walk anywhere." (Doc. 5-3 at 60 (emphasis added)). *Id.* at 660 (emphasis added). The record demonstrates Plaintiff's activities were inconsistent with this testimony.

The ALJ explained that contrary to Plaintiff's testimony that she could barely walk or do anything, she previously stated she could prepare meals, shower, do dishes, wash

laundry, take care of her dogs, shop, mow the lawn, drive, manage her finances, visit the food bank, attend church meetings, and watch television. (Doc. 5-3 at 35) And the ALJ acknowledged that by March 2023, although Plaintiff reported fewer activities, she still confirmed her ability "to take care of her dogs, do laundry, prepare meals, pay bills, watch television, alternate between sitting and standing, play card games on the computer, do puzzles, go grocery shopping, and take care of most of her personal needs." (*Id.*); *see Smartt*, 53 F.4th at 499 (holding that "[e]ven if the claimant experiences some difficulty or pain, her daily activities 'may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment'") (quoting *Molina*, 674 F.3d at 1113).

Moreover, Plaintiff's alleged inability to barely walk or do anything is contradicted by a report from July 2022 where "[s]he stated she [was] able to take care of most of her personal needs," "she makes easy meals," and she noted that although "she does not do her tasks in a timely manner . . . she is able to finish them." (Doc. 5-8 at 140). By March 2023, Plaintiff could not meaningfully perform shopping or chores, but she could "brush[] teeth, wash face, make Keurig coffee," and alternate between "sitting and standing." (*Id.* at 182). Hence, the Court finds that because Plaintiff testified that she could barely walk or do anything, the ALJ properly discounted her credibility to the extent that her daily activities were inconsistent with an inability to work in *any* capacity. *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding the claimant's ability to "take care of her personal needs, prepare easy meals, [and] do light housework . . . may be seen as inconsistent with the presence of a condition which would preclude *all* work activity") (citations omitted) (emphasis added).

Plaintiff next argues the ALJ erred in discrediting Plaintiff's testimony that she could barely sit for a 10-minute drive to the store because she testified to driving on occasion and riding with her brother from Washington to Arizona. (Doc. 6 at 12-13). Plaintiff argues that she testified having to travel in the car from Washington to Arizona was "unfortunate" and she had only driven one to two times since moving to Arizona. (*Id.*)

Plaintiff is correct, the ALJ overlooked Plaintiff's testimony that she "can't even sit" for the ten-minute drive to the grocery store, that she drives very little, and that her brother drove her from Washington to Arizona because she could "hardly drive anymore." (Doc. 5-3 at 63). Therefore, the Court finds the ALJ did not provide specific, clear, and convincing reasons for discrediting Plaintiff's testimony on this basis. However, as analyzed below, this error is harmless.

Plaintiff then argues that the ALJ erred in discrediting Plaintiff's testimony regarding how much weight she could lift. (Doc. 6 at 13). At the administrative hearing in April 2024, Plaintiff testified she could pick up and carry "two-and-a-half to maybe four pounds," and that she could probably pick up and carry a gallon of milk for "two to three minutes." (Doc. 5-3 at 62-63). In discrediting this testimony, the ALJ cites a report that indicates Plaintiff could lift between 10 and 20 pounds. (Doc. 5-3 at 35). That report, however, does not indicate when it was written. (Doc. 5-7 at 21). Therefore, it is unclear at what point in time Plaintiff had reported she could lift between 10 and 20 pounds. Accordingly, the Court finds the ALJ's decision to discredit Plaintiff's symptom testimony regarding her ability to lift a gallon of milk is not supported by substantial evidence.

The ALJ, however, did not reject Plaintiff's symptom testimony solely for these reasons—the ALJ also cited inconsistencies Plaintiff's other daily activities and her symptom testimony as reasons for discrediting her, as discussed above. Because the ALJ permissibly discredited Plaintiff's testimony based on these two reasons, his error was harmless. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162–63 (9th Cir. 2008) (indicating that if the ALJ rejects Plaintiff's symptom testimony for a single permissible purpose, then the ALJ's errant rejection of the testimony for other additional reasons is harmless).

Plaintiff argues "the ALJ found the objective medical evidence did not limit Markwell beyond what was contained in the RFC . . . [t]his is legally unsustainable reasoning as it does not show a contradiction specifically between testimony and the record." (Doc. 6 at 14). Plaintiff misreads the ALJ's decision. The ALJ found Plaintiff's

statements "are inconsistent with the severity of impairment alleged and instead demonstrate the claimant can perform the range of work described in the residual functional capacity above," immediately after providing specific reasons for rejecting Plaintiff's testimony—the very same reasons Plaintiff challenged above, which the Court already discussed. (Doc. 5-3 at 35). Accordingly, the ALJ did more than discount Plaintiff's testimony "solely based on the objective medical evidence [that] does not substantiate the degree of impairment-related symptoms alleged." (Doc. 6 at 6).

**C. The ALJ's Evaluation of the Medical Opinions**

Plaintiff argues that substantial evidence did not support ALJ's rejection of the medical opinions Advanced Registered Nurse Practitioner ("ARNP") Benton, Family Nurse Practitioner ("FNP") Whiting, Physician Assistant-Certified ("PA-C") Behne, Dr. Jacobsson, Dr. Stuart, Dr. Flanagan, Dr. Eather, and Dr. Schultz because the ALJ failed to discuss the supportability and consistency factors with citation to substantial evidence. (Doc. 6 at 17–25). Plaintiff asserts that absent the non-examining State agency source, every other medical source assessed Plaintiff with disabling physical limitations. (*Id.* at 17). Conversely, Defendant argues that the ALJ's assessment of the medical opinions was reasonable and supported by substantial evidence. (Doc. 8 at 12–21).

1. Legal Standard

In evaluating medical opinions, the Ninth Circuit Court of Appeals previously employed the "treating physician rule," which distinguished between treating physicians, examining physicians, and non-examining physicians, generally giving the greatest weight to the opinions of treating physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, in March 2017, the SSA amended their regulations to abrogate the treating physician rule, among other changes, and all claims filed on or after March 27, 2017, must adhere to these amended regulations. *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022). The amended regulations state that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical

sources." 20 C.F.R. § 404.1520c(a).

Moreover, the Ninth Circuit has determined that in cases governed by the amended regulations, the "specific and legitimate" standard is no longer applicable, meaning an ALJ is no longer required to articulate "specific and legitimate reasons" for rejecting a treating physician's opinion. *Woods*, 32 F.4th at 791–92. Instead, the amended regulations provide that in considering all medical opinions, an ALJ should consider several enumerated factors, including supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the "most important factors," and the ALJ must articulate how he considered supportability and consistency in determining how persuasive a medical opinion is. 20 C.F.R. § 404.1520c(b)(2). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* (quoting 20 C.F.R. § 404.1520c(c)(2)). If the ALJ finds that two or more medical opinions differ slightly but are equally well-supported and consistent with the record, then the ALJ must also articulate how he considered the other enumerated factors. 20 C.F.R. § 404.1520c(b)(3).

2. <u>ARNP Benton</u>

Plaintiff argues that the ALJ erred in rejecting ARNP Benton's medical opinion. (Doc. 6 at 18–19). The ALJ summarized ARNP Benton's opinion as follows:

> Following the May 2022 consultative exam, ARNP Benton opined the claimant could lift/carry 10 pounds frequently and occasionally, and had no limits on standing/walking, sitting, postural movements, manipulations, or workplace environmental activities.

(Doc. 5-3 at 37 (citing Doc. 5-8 at 129–135)). The ALJ found ARNP Benton's opinion unpersuasive because it was not supported by the record and inconsistent with other medical records. (*Id.*)

Regarding supportability, the ALJ explained:

> ARNP Benton's opinion is not supported by her own exam findings including the claimants normal grip strength, normal range of motion with the neck, shoulders, elbows, wrists, fingers, hips, knees, and ankles. ARNP Benton's opinion is also unsupported by the claimant's failure to exhibit any tenderness, muscle spasm, atrophy, or joint deformity. Additionally, the claimant has reported she could lift/carry up to 20 pounds.

(Doc. 8-3 at 37 (citing Doc. 5-7 at 21; Doc. 5-8 at 129–135)). Plaintiff contends this finding is "unsustainable," as the ALJ failed to explain how ARNP Benton's limitations were unsupported by the fact that Plaintiff weighed 300 pounds, was 62 years old, and had a history of back, knee, and shoulder surgeries. (Doc. 6 at 18). Plaintiff, however, does not explain how any of these characteristics rendered the ALJ's analysis unsupported. And in the ALJ's assessment of ARNP Benton's opinion, shown above, the ALJ highlights multiple items of evidence in the record demonstrating that the medical evidence does not support ARNP Benton's 10-pound lifting limitation (e.g., ARNP Benton's report found Plaintiff had 5/5 grip strength in both hands, had no difficulty making a fist with both hands). (*Id.*; Doc. 5-8 at 132). *See* 20 C.F.R. § 404.1520(c)(1) (regarding supportability, the more relevant objective medical evidence is to support the medical opinion, the more persuasive the medical opinion will be); *Connett v. Barnhart*, 340 F.3d 871, 874–75 (9th Cir. 2003) (finding the fact that a physician's opinion was not supported by his own treatment notes was a valid reason to not credit the opinion).

Moreover, the ALJ determined ARNP Benton's opinion was not consistent with the record. (*Id.*). Regarding consistency, the ALJ explained:

> [T]he claimant's other exams that do show signs of back tenderness, limited lumbar flexion, and positive straight leg raising are not consistent with this opinion.

(Doc. 8-3 at 37 (citing Doc. 5-8 at 147, 151, 154, 159, 180–191, 265–68)). Plaintiff argues that exams showing back tenderness, limited lumbar flexion, and positive straight leg raising demonstrate greater abnormalities than what ARNP Benton found, and therefore indicate even greater limitations than what ARNP Benton assessed. (Doc. 6 at 19). The

Court agrees. The ALJ does not explain how these inconsistencies would not lead to an even greater limitation. Nevertheless, because substantial evidence supports the ALJ's decision to find ARNP's opinion unpersuasive due to supportability, any deficiency in the consistency analysis would be harmless. *See Morfin v. Comm'r of Soc. Sec. Admin.*, No. CV-24-02459-PHX-KML, 2025 WL 2426691, at *3 (D. Ariz. Aug. 22, 2025); *Woods*, 32 F.4th at 792–94 n. 4 (suggesting that even where an ALJ provides no supportability analysis for a medical opinion, the ALJ may properly find the opinion unpersuasive provided there is an inconsistency finding supported by substantial evidence).

3. <u>FNP Whiting</u>

Plaintiff argues that the ALJ erred in rejecting FNP Whiting's limitations. (Doc. 6 at 19). The ALJ summarized FNP Whiting's opinion as follows:

> Following the March 2023 consultative physical evaluation, Zarima Whiting, FNP, opined the claimant [was] significantly more limited than assessed by ARNP Benton and Dr. Stuart. FNP Whiting opined the claimant could stand/walk 30 minutes to 2 hours cumulatively and for 15 to 45 minutes at a time and she could sit for 30 minutes to 2 hours cumulatively and for 30 to 60 minutes at a time. FNP Whiting opined the claimant could not squat, kneel, climb, crawl, or use foot controls. FNP Whiting opined the claimant could lift up to 10 pounds occasionally and only 3 to 7 pounds frequently, and she could push/pull and reach only occasionally. FNP Whiting further opined the claimant could tolerate frequent exposure to temperature extremes, occasional exposure to vibration, motor vehicle related operation, and no exposure to unprotected heights.

(Doc. 5-3 at 38 (citing Doc. 5-8 at 180–190)). The ALJ found FNP Whiting's opinion unpersuasive because her opined limitations were inconsistent with the other medical records. (*Id.*)

Regarding the inconsistencies, the ALJ explained:

> The undersigned is not persuaded by [FNP] Whiting's opinion. Although the claimant did exhibit more significant signs during this exam, they are not consistent with the other consultative or treating exams of record. Further, these limitations do not make sense with cumulative limitations for standing/walking and sitting of less than the amount that the claimant could stand/walk at one time. Additionally, the claimant has submitted statements that she is capable of more lifting/carrying than assessed by [FNP] Whiting. [FNP]

> Whiting's assessment is also inconsistent with the claimant's exhibited good grip strength bilaterally and near normal motor strength seen at the exam with Dr. Whiting and at the consultative exam with ARNP Benton. As such, the undersigned is not persuaded by this opinion.

(Doc. 5-3 at 38 (citing Doc. 5-7 at 21–31; Doc. 5-8 at 129–135, 142–164, 180–191, 265–268)).

Plaintiff challenges the ALJ's finding that FNP Whiting's cumulative standing/walking and sitting limitations "did not make sense." Record evidence substantially supports the ALJ's inconsistency finding. For example, FNP Whiting opined that for Plaintiff, "[m]ost of the day is spent watching TV, sitting and standing." (Doc. 5-8 at 182). But the ALJ cited other reports that indicated otherwise. For example, one report noted Plaintiff would wake up and take care of her dogs, perform all activities of self-care, and perform yard work. (Doc. 5-3 at 38 (citing Doc. 5-8 at 131)). And another report indicated Plaintiff was walking 3 times per week. (*Id.* (citing Doc. 5-8 at 145)). The ALJ also noted FNP Whiting's opined limitations did not make sense with the cumulative limitations. Accordingly, substantial evidence supports the ALJ's finding.

Plaintiff next challenges the ALJ's finding that Plaintiff's manipulative limitations were unsupported by the exam. (Doc. 6 at 20). Plaintiff contends the exam demonstrated Plaintiff had reduced shoulder strength, missing brachioradialis reflexes, and neck tenderness. (*Id.*) Plaintiff makes an additional argument that the ALJ erred in finding FNP Whiting's assessment was not consistent with the other exams. (*Id.*) Because the ALJ found the manipulative limitations were inconsistent with other exams, the Court will address these arguments as one.

The ALJ found first found FNP Whiting's assessment was inconsistent with the good grip strength bilaterally and almost normal motor strength observed at the exam. (Doc. 5-3 at 38). The report indicated Plaintiff could easily make a fist with both hands, there was no tenderness to palpation in either hand or wrist, only mild pain was observed during the motor exam for upper extremities, and Plaintiff tested normal in both hands for "MCP flexion, PIP flexion, DIP flexion, MCP extension, PIP extension, [and] DIP

extension." (Doc. 5-8 at 182–84). Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's manipulative functioning is not limited to the extent opined by FNP Whiting.

The ALJ next found FNP Whiting's assessment was not consistent with ARNP Benton's exam. (Doc. 5-3 at 38). ARNP Benton's report indicated Plaintiff had 5/5 grip strength in both hands and 5/5 motor function in left and right upper extremities. (Dc. 5-8 at 132–33). She also found a normal range of motion in Plaintiff's wrists, thumb, and fingers. (*Id.* at 133). As discussed, substantial evidence supports the ALJ's finding that FNP Whiting's opinion was inconsistent and therefore not persuasive.

4. <u>PA-C Behne</u>

Plaintiff argues that the ALJ erred in rejecting PA-C Behne's limitations. (Doc. 6 at 21). The ALJ summarized PA-C Behne's opinion as follows:

> In July 2023, Kelly Behne, PA-C, completed a Medical Source Statement on the claimant's behalf. PA-C Behne opined that the claimant had moderate limitations in terms of remembering locations and work-like procedures. She also opined the claimant would need to lie down for 5 minutes at a time about 50% of the day due to pain and she would be absent from work more than 4 days per month due to medical appointments. PA-C Behne explained that the claimant would experience greater pain if she was too physically active or too sedentary. She opined the claimant could not travel by bus or subway for more than brief periods.

(Doc. 5-3 at 38 (citing Doc. 5-8 at 192–200, 257–60)). The ALJ found PA-C Behne's opinion unpersuasive because it was not supported by the record and inconsistent with other medical records. (*Id.*)

Regarding supportability, the ALJ explained:

> PA-C Behne's assertion that the claimant had moderate limitations in terms of memory is unsupported by any clinical findings from her own or other exams of record where the claimant was noted to have intact memory and where she was noted to be a good historian. Additionally, PA-C Behne's notes state that the claimant was able to walk 3 times per week in December 2021 and she was trying to stay active in October 2022. PA-C Behne's physical examinations note the claimant retained a well-developed build and well-nourished appearance with no edema which do not support her assessment that the claimant would need to lie down 50% of

> the day. Although the claimant exhibited some tenderness in various locations from the cervical spine to lumbar spine and across the bilateral buttock with light palpation, these findings alone do not support PA-C Behne's significant functional limitations.

(Doc. 5-3 at 38 (citing Doc. 5-8 at 41, 43, 59, 74, 117, 123, 145–47, 151, 154, 159)).

Plaintiff takes issue with each of the ALJ's findings regarding supportability. First, Plaintiff argues the ALJ's finding regarding memory is unrelated to the ALJ's primary physical findings. It is unclear what Plaintiff's argument is regarding this part of the ALJ's decision, and the Court has not discerned any error.

Second, Plaintiff argues there is no clear contradiction between activity levels and PA-C Behne's physical limitations. (Doc. 6 at 21). The ALJ found PA-C Behne's limitation of needing to lie down for 5 minutes at a time about 50% of the day and that Plaintiff would experience greater pain if she was too physically active or sedentary was unsupported by the fact that Plaintiff could walk 3 times per week in December 2021 and Plaintiff was trying to stay active in October 2022. (Doc. 5-3 at 38). The ALJ's decision to discredit this portion of PA-C Behne's opinion is supported by substantial evidence. PA-C Behne's report indicated Plaintiff was walking around the house, she was walking 3 times a week, and she had "some limit to exercise but [was] trying to stay active." *See Connett*, 340 F.3d at 874–75 (finding the fact that a physician's opinion was not supported by his own treatment notes was a valid reason to discredit the opinion); *see also Houghton v. Comm'r Soc. Sec. Admin.*, 493 F. App'x 843, 845 (9th Cir. 2012) (holding that the ALJ's conclusion that a medical source's opinions were internally inconsistent established a specific and legitimate basis to discount them).

Third, Plaintiff argues the ALJ erred in finding Plaintiff's tenderness alone was insufficient to support PA-C Behne's opinion. (Doc. 6 at 21). Plaintiff argues PA-C Behne also relied on Plaintiff's abnormal lumbar magnetic resonance imaging ("MRI") with spinal cord and disc herniation, and other abnormalities such as paraspinal muscular atrophy, severe foraminal and canal narrowing, and compression of the L5 nerve root in deciding the extent of Plaintiff's limitations. (*Id.*) Plaintiff isolates this one sentence from

the rest of the ALJ's findings. The ALJ found that although Plaintiff had some tenderness from her cervical spine to lumbar spine and across the bilateral buttock, other reports did not support such "significant functional limitations." (Doc. 5-3 at 38). It is understandable why the ALJ found results describing tenderness in various locations with **light** palpitation and Plaintiff's build appearing well developed were inconsistent with PA-C Behne's opinions that Plaintiff would need to lie down for 5 minutes at a time 50% of the day. As such, the ALJ provided "relevant evidence as a reasonable mind might accept as adequate to support his conclusion." *Webb*, 433 F.3d at 686.

Regarding inconsistency, the ALJ explained:

> Moreover, the claimant's other exam findings including no acute distress; ambulation without assistance (albeit sometimes slowly); no edema or neurological deficits; and good range of motion throughout most of the body including her shoulders, hips, knees, and neck, are inconsistent with PA-C Behne's opinion. Additionally, the claimant's reports that she can still drive and that she was able to sit for the drive from Washington to Arizona are inconsistent with the limitations stated in PAC Behne's opinion (Hearing Testimony).

(Doc. 5-3 at 38 (citing Doc. 5-8 at 130–35, 147, 151, 154, 159)).

As an initial matter, Plaintiff argues the evidence of her driving from Washington to Arizona is "unsustainable." As analyzed above, the ALJ erred in relying on this evidence because Plaintiff likewise testified to it being "unfortunate" that she had to ride in the car from Washington to Arizona, that she only drove in Arizona once or twice since moving, and that she could hardly drive anymore. (Doc. 5-3 at 63). This however, is not the only reason the ALJ gave for finding PA-C Behne's opinion inconsistent with the record. Accordingly, the error is harmless. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citation omitted) (indicating an error is harmless if it is "inconsequential to the ultimate non[-]disability determination").

Plaintiff next argues the "ALJ otherwise found no acute distress, a lack of neurological defects, and good ROM."[3] (Doc. 6 at 22). Plaintiff broadly states the ALJ

[3] Plaintiff does not define the acronym "ROM" anywhere in her brief; the Court believes it means range of motion.

failed to consider how PA-C Behne's opinions matched with other medical sources. It is unclear how this statement supports Plaintiff's argument that the ALJ erred in finding PA-C Behne's opinion was inconsistent with the record, nor does Plaintiff point the portions of the record she believes the ALJ failed to consider. Further, the standard for finding a medical opinion unpersuasive based on inconsistency does not require findings of "acute distress, a lack of neurological defects, [or] good ROM," as Plaintiff contends. *See* 20 C.F.R. § 404.1520c(c)(2) (defining consistency as the more consistent medical opinions are with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be).

Plaintiff lastly argues courts have questioned the applicability of "acute distress" for chronic conditions. (Doc. 6 at 22). Plaintiff is correct that *Reinertson v. Barnhart*, notes that "a condition marked by chronic pain throughout the body is not necessarily in acute distress." 127 Fed. App'x 285, 290 n. 2 (9th Cir. 2005) (unpublished) (citation modified). But the ALJ did not rely solely on Plaintiff's lack of acute distress in finding PA-C Behne's opinion was inconsistent with the record. Indeed, the ALJ points to PA-C Behne's report that indicated Plaintiff had no edema, no neurological defects, and a good range of motion throughout her body. (Doc. 5-3 at 39). It is reasonable that the ALJ found PA-C Behne's limitation to lying down for 5 minutes at a time for about 50% of the day and that Plaintiff would experience greater physical pain if she was too active or too sedentary was inconsistent with PA-C Behne's report that Plaintiff had no edema and a good range of motion throughout her body. *See Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (noting that "if the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ").

5. <u>Dr. Jakobsson</u>

Plaintiff argues that the ALJ erred in rejecting Dr. Jakobsson's limitations. (Doc. 6 at 22–23). The ALJ summarized Dr. Jakobsson's opinion as follows:

> In March 2024, Asta Jakobsson, DO, completed a Medical Provider Questionnaire on the claimant's behalf. Dr. Jakobsson noted diagnoses of chronic low back pain, degenerative disc disease, spinal stenosis, and status post spinal fusion. Dr.

> Jakobsson noted symptoms of chronic back pain with numbness and tingling in legs and feet. Dr. Jakobsson wrote that the claimant needed to change between a chair and lying down multiple times a day for up to 3 hours at a time. However, Dr. Jakobsson opined that regular and continuous work would cause the claimant's condition to deteriorate explaining by stating limited function due to pain. Dr. Jakobsson opined the claimant would miss work more than 4 days per month due to pain episodes and/or specialty appointments. Dr. Jakobsson further opined that the claimant was unable to meet the demands of fulltime sedentary work and could not travel by bus or subway.

(Doc. 5-3 at 38 (citing Doc. 5-8 at 261–64)). The ALJ found Dr. Jakobsson's opinion unpersuasive because it was not supported by the record and inconsistent with other medical records. (*Id.*)

The ALJ explained:

> The only clinical findings or signs noted in this Questionnaire were the magnetic resonance imaging (MRI) study results confirming the claimants degenerative disc disease and spinal stenosis. Although Dr. Jakobsson is a treating provider, he does not note any of his own clinical findings and instead appears to cite only the claimant's subjective reports of pain and limited functioning as rationale for his opinion. Although Dr. Jakobsson reported treating the claimant since 2017, the record contains only one visit in March 2024 where the claimant was seen to establish care and asked for completion of disability paperwork. During the March 2024 exam, the claimant was able to move all extremities spontaneously and equally; only mild tenderness to palpation was noted along the lower midline or spinous processes; and the claimant appeared to be in no acute distress. Dr. Jakobsson observed some positive straight leg raise testing bilaterally and quiet lower extremity reflexes, but these findings do not justify the severe restrictions stated in his opinion. Moreover, at other exams the claimant also did not exhibit any acute distress; she ambulated without assistance (albeit sometimes slowly); she had no edema or neurological deficits; and she had good range of motion throughout most of the body including her shoulders, hips, knees, and neck. She also exhibited normal grip strength in both hands and normal motor function in the upper and lower extremities; she was able to make a fist with both hands; she was able to pick up a coin from a flat surface easily with either hand; and she had no difficulty buttoning/ unbuttoning, zipping/unzipping, or tying clothing. These findings are inconsistent with Dr. Jakobsson's opinion. Therefore, the undersigned does not find this opinion is persuasive.

(Doc. 5-3 at 38 (citing Doc. 5-8 at 129–135, 147, 151, 154, 159, 180–191, 261–66)).

Plaintiff first argues "[f]or the reasons stated above . . . the ALJ again failed to

address the similarities between these source's opinions." (Doc. 6 at 22–22). Plaintiff is incorrect. The ALJ specifically cited other exams with ARNP Benton, PA-C Behne, and FNP Whiting to contrast those reports with Dr. Jakobsson's. (Doc. 5-3 at 39 (citing Doc. 5-8 at 129, 145, 180)).

Plaintiff next argues the ALJ erred in stating Dr. Jakobsson started treating Plaintiff in March 2017. (Doc. 6 at 23). Plaintiff fails to explain how this error rendered the ALJ's finding unsupported by substantial evidence. Moreover, the ALJ did not rely on this fact in conducting her analysis, as she specifically noted that "[a]lthough Dr. Jakobsson reported treating the claimant since 2017, the record contains only one visit in March 2024." (Doc. 5-3 at 39).

Third, Plaintiff argues the ALJ erred in finding Dr. Jakobsson's opinion unpersuasive because Dr. Jakobsson only relied on Plaintiff's MRI and Plaintiff's own self-report. (Doc. 6 at 23). Plaintiff isolates only one portion of the ALJ's decision. The ALJ did not discredit Dr. Jakobsson solely because Dr. Jakobsson relied on MRI results and Plaintiff's own self-report. (*See* Doc. 5-3 at 39). Indeed, the ALJ noted inconsistencies in the medical record where Plaintiff was able to move all extremities, only had mild tenderness to palpation, and Plaintiff ambulated without assistance. (*Id.*) Accordingly, the Court affirms the ALJ's decision to reject Dr. Jakobsson's opinion on the basis of inconsistency.

6. <u>Dr. Stuart</u>

Plaintiff argues that the ALJ erred in finding Dr. Stuart's opinion persuasive. (Doc. 6 at 22–23). The ALJ summarized Dr. Stuart's opinion as follows:

> At the reconsideration level, in March 2023, Robert Stuart, M.D., found the record supported severe physical impairments of lumbar spinal stenosis, obesity, and knee osteoarthritis. Dr. Stuart found the claimant was capable of light work with 4 hours of standing/walking and 6 hours of sitting in an 8-hour workday. Dr. Stuart found the claimant could frequently stoop, but never climb ladders/ropes/scaffolds, and occasionally climb ramps/stairs, balance, kneel, crouch, and crawl. Dr. Stuart also opined the claimant needed to avoid concentrated exposure to wetness and vibration and even moderate exposure to hazards.

(Doc. 5-3 at 37 (citing Doc. 5-4 at 9–17)). The ALJ found Dr. Stuart's opinion persuasive. (*Id.*)

The ALJ explained:

> Dr. Stuart's opinion is persuasive because he explained his opinion and noted findings from the record including two consultative examinations occurring a few months apart with vastly different presentations and no objective explanation for such differences. Dr. Stuart's opinion also cites to x-rays of the knees showing only mild osteoarthritis in one compartment. Dr. Stuart also has an understanding of our disability program's policies and evidentiary requirements. His opinion is consistent with the claimant's history of intermittent treatment for the severe physical impairments, her conservative treatment showing some use of medication but no desire to attend physical therapy, and the minimal findings at a number of exams. Dr. Stuart's opinion is also consistent with the claimant's reported activities such as sitting for several hours watching television, cooking for up to 30 minutes at a time, and lifting/carrying between 10 and 20 pounds. As such, Dr. Stuart's opinion is persuasive.

(Doc. 5-3 at 37 (citing Doc. 5-4 at 9–17; Doc. 5-7 at 21–31, 63–68; Doc. 5-8 at 129–135, 147, 151, 154, 159, 261–66)).

Plaintiff first argues the ALJ erred in finding Dr. Stuart's opinion persuasive because there were "vastly different" findings between ARNP Benton's and FNP Whiting's reports and the ALJ failed to consider evidence that these exams took place 8 months apart. (Doc. 6 at 24). Specifically, Plaintiff argues both ARNP Benton and FNP Whiting assessed disabling limitations. (*Id.*) However, as the ALJ cited, Plaintiff told ARNP Benton her condition was worsening due to chronic pain and the report noted Plaintiff did not seek care for the alleged worsening. (Doc. 5-3 at 37 (citing Doc. 5-4 at 15)). This contrasts with FNP Whiting's report, which indicated Plaintiff's reported knee pain despite x-rays indicated "only mild OA in one compartment." (*Id.* (citing Doc. 5-4 at 15)). And Plaintiff told FNP Whiting that she alternated between sitting and standing but then presented as if she could barely stand. (*Id.* (citing Doc. 5-4 at 15)). Moreover, the ALJ acknowledged the reports were a "few months" apart and the report the ALJ cited noted the exams took place "several months apart." (*Id.* (citing Doc. 5-4 at 15)). Accordingly, the Court finds no error.

Plaintiff next argues the knee x-ray showing "mild OA"[4] failed to account for the abnormalities in the lumbar MRI, "as addressed above." (Doc. 6 at 24). However, as addressed above, the ALJ considered the abnormalities in the lumbar MRI. (*See* Doc. 5-3 at 37 (citing Doc. 5-4 at 11 (detailing MRI results))).

Plaintiff then argues the ALJ erred in finding Dr. Stuart's opinion was consistent with Plaintiff "seeking 'intermittent' treatment, having conservative treatment, not wanting physical therapy (PT), and 'minimal' findings on exam." (Doc. 6 at 24). Plaintiff is correct, the ALJ failed to consider Plaintiff's lapse in treatment was due to losing her medical coverage in her divorce and that the ALJ did not explain Plaintiff's reasoning for declining treatment. (*See* Doc. 5-8 at 211, 243). However, these were not the only reasons the ALJ provided for finding Dr. Stuart's opinion was persuasive, and any error was therefore harmless. *See Ford*, 950 F.3d at 1154 (citation omitted) (indicating an error is harmless if it is "inconsequential to the ultimate non[-]disability determination").

Regarding Plaintiff's argument that her 2019 lumbar spine surgery does not constitute a conservative treatment, the ALJ did not err. Plaintiff had surgery on her spine in 2019, which was prior to her alleged onset date of disability of August 22, 201. (Doc. 5-8 at 28). And the ALJ cited to substantial evidence in the record indicating Plaintiff experienced improvement after the surgery. (Doc. 5-3 at 37). The ALJ did not err in focusing on Plaintiff's course of treatment during the relevant period. *See Sereno v. Comm'r of Soc. Sec. Admin.*, No. CV-25-00227-TUC-RCC (MSA), 2026 WL 2409454, at *5 (D. Ariz. Aug. 18, 2026) (finding the ALJ did not err in considering treatment received during the relevant period and excluding the claimant's surgery that occurred prior to the disability period).

Regarding Plaintiff's argument that the ALJ failed to consider her reasons for denying physical therapy, the Court is unpersuaded. In support of her argument, Plaintiff cites a report that indicates physical therapy did not provide her any benefit. (Doc. 6 at 25 (citing Doc. 5-8 at 243)). This report, however, only indicates that physical therapy done

[4] Plaintiff does not define the acronym "OA" anywhere in her brief.

in 2019 did not provide any benefit. (Doc. 5-8 at 243). Physical therapy done in 2019 occurred prior to Plaintiff's alleged disability onset date of August 22, 2021. The ALJ did not err in not considering this portion of the report.

7. Dr. Flanagan and Dr. Eather

Plaintiff argues that the ALJ erred in finding Dr. Flanagan and Dr. Eather's opinions persuasive. (Doc. 6 at 22–23). The ALJ summarized their opinions as follows:

> There are also opinions regarding the claimant's mental impairments. At the initial level, in June 2022, Rita Flanagan, Ph.D., found that the records available did not establish any medically determinable mental impairments. At the reconsideration level, Bruce Eather, Ph.D., found that the claimant's records still did not establish any medically determinable mental impairments.

(Doc. 5-3 at 31 (citing Doc. 5-4 at 3–17)). The ALJ found both their opinions persuasive. (*Id.*)

The ALJ explained:

> The undersigned finds these prior administrative medical findings from Drs. Flanagan and Eather are persuasive. They explained their opinions with clear citations to the record including citation to the consultative mental exam where no mental diagnoses were established and to mental status exams where the claimant was alert and oriented with no impairment of memory and normal. Additionally, Drs. Flanagan and Eather have an understanding of our disability program's policies and evidentiary requirements. Their opinions are consistent with the claimant's lack of mental health treatment and the normal findings at a number of exams. Their opinions are also consistent with the claimant's reported activities such as being able to follow written instructions, finish what she started, manage her own finances, prepare meals, and watch television for multiple hours per day. Therefore, these opinions are persuasive

(Doc. 5-3 at 31 (citing Doc. 5-7 at 21–31, 53–60; Doc. 5-8 at 114, 147, 150, 154, 159, 222, 225, 230, 233, 240, 266)).

Plaintiff argues the ALJ failed to address the supportability and consistency factors in finding their opinions persuasive. (Doc. 6 at 25–26). Supportability is the extent to which the medical examiners' objective medical evidence and supporting explanations back up their opinions. *See* 20 C.F.R. § 404.1520c(1). Here, the ALJ's findings as to supportability

are supported by substantial evidence. The ALJ noted Dr. Flanagan and Dr. Eather's opinions were explained with clear citations to the record, including citing their exams that reported Plaintiff was alert, oriented, and had normal affect. (Doc. 5-3 at 32–33 (citing Doc. 5-4 at 3–17)). It is unclear what Plaintiff's argument that these doctors "gave no medical opinions at all," means, and the Court discerns no error. (Doc. 6 at 25). Turning to consistency, this concerns whether the medical examiners' opinions are corroborated by evidence from other sources. *See* 20 C.F.R. § 404.1520c(2). The ALJ's findings as to consistency are supported by substantial evidence. The ALJ specifically cited other reports in the record that noted Plaintiff's lack of mental health treatment and normal findings. (Doc. 5-3 at 33 (citing Doc. 5-8 at 114, 147, 150, 154, 159, 222, 225, 230, 233, 240, 266)). Accordingly, the Court finds no error.

8. Dr. Schultz

Plaintiff argues that the ALJ erred in finding Dr. Schultz's opinion persuasive. (Doc. 6 at 22–23). The ALJ summarized her opinion as follows:

> Following the July 2022 consultative exam, Jenifer Schultz, Ph.D., opined the claimant's presentation was not consistent with any diagnosis. Dr. Schultz summarized her exam findings, but she did not offer a functional assessment. This is also consistent with the evidence of record. The totality of the evidence does not support any medically determinable mental impairment.

(Doc. 5-3 at 32 (citing Doc. 5-4 at 136–141)). The ALJ found both Dr. Schultz's opinion was "consistent with the evidence of the record" and that Dr. Schultz's opinion together with Dr. Flanagan and Dr. Eather's opinions demonstrated that "[t]he totality of the evidence does not support any medically determinable mental impairment." (*Id.*)

Plaintiff contends the ALJ erred in finding Dr. Schultz gave "no functional assessment" when Dr. Schultz found Plaintiff's daily living skills and occupational adaptation were poor and her social adaptation was only "okay." (Doc. 6 at 25). Plaintiff is correct, as Dr. Schultz gave a "functional assessment" that noted Plaintiff could "think in an abstract manner," "reason," "understand[]," "focus," "finish[] her tasks," have "some social interaction." Doc. 5-8 at 140. The assessment also noted Plaintiff's "social

adaptation is okay but her daily living skills and occupational adaptation are poor." (*Id.*) Nevertheless, this error is harmless. *See Ford*, 950 F.3d at 1154 (citation omitted) (indicating an error is harmless if it is "inconsequential to the ultimate non[-]disability determination"). The ALJ relied on other reasoning in finding Dr. Schultz's medical opinion was persuasive, as analyzed below.

Plaintiff contends the ALJ failed to provide substantial evidence for finding Dr. Schultz's opinion persuasive. (Doc. 6 at 25–26). However, in finding Dr. Schultz's opinion persuasive, the ALJ noted the "totality of the evidence does not support any medically determinable impairment." (Doc. 5-3 at 32). In the paragraphs immediately preceding this sentence, the ALJ discussed her reasons for finding Dr. Flanagan and Dr. Eather's opinions persuasive. (*Id.* at 31–32). Although the ALJ did not repeat her analysis when discussing her reasons for finding Dr. Schultz's opinion persuasive, she stated that "the totality of the evidence does not support any medically determinable mental impairment." (Doc. 5-3 at 33). This incorporated her analysis from above along with her previous findings that the record supports finding Plaintiff had no medically determinable impairments. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (noting that the Court will not "fault the agency merely for explaining its decision with less than ideal clarity," provided the "path may be reasonably discerned") (citation modified). And substantial evidence supports the ALJ's finding that Dr. Schultz's opinion is supported by the record as a whole. *See Magallanes*, 881 F.2d at 750 ("To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion.") (citation modified).

**C. Further Proceedings**

Finally, Plaintiff requests a remand for further proceedings or a calculation of benefits pursuant to the credit-as-true rule. (*See* Doc. 17 at 21.) But the Court is affirming the ALJ's decision; therefore, the Court denies Plaintiff's request for a remand without considering the credit-as-true doctrine. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017), *as amended* (Jan. 25, 2018) (A direct award of benefits is proper "only when

the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits.").

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 29th day of September, 2026.

James A. Teilborg
Senior United States District Judge